**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Christopher Bort,<br>Plaintiff,<br>v.<br>United States Department of Justice, et al.,<br>Defendants. | No. CV-23-00285-TUC-MSA<br>**ORDER** |

Plaintiff Christopher Bort moves to consolidate this case with another case he filed earlier this year. The motion will be denied.

## I. Factual Allegations[1]

### A. The Present Lawsuit

Plaintiff is a white employee of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) who worked as a special agent in Tucson. (Doc. 1, ¶¶ 1, 24–25.) In late 2017, Plaintiff learned that Assistant Special Agent in Charge (ASAC) Mark Murray, who is black, intended to select Jeffrey Bell, who is also black, for an upcoming Resident Agent in Charge (RAC) vacancy in Tucson. (*Id.* ¶¶ 26–29.) Murray appointed Bell to serve as the acting RAC in January 2018, and a promotion board made the appointment permanent in February 2018. (*Id.* ¶¶ 32, 43.) Plaintiff was more qualified than Bell, and his nonselection deprived him of promotional opportunities and earnings. (*Id.* ¶¶ 44, 47.)

---

[1] The following allegations are taken from Plaintiff's complaints. In Section I.A., citations to "Doc. 1" refer to the complaint in this case. In Section I.B., citations to "Doc. 1" are to the complaint in the follow-on case (No. CV-26-00493-TUC-EJM).

Plaintiff contacted the ATF's Equal Employment Opportunity (EEO) office in April 2018 and filed a formal discrimination complaint in June 2018. (*Id.* ¶¶ 9, 12.) Thereafter, Plaintiff was subjected to retaliation and a hostile work environment. (*Id.* ¶¶ 147–54.) Among other things, Bell made threatening statements to Plaintiff in July 2018, failed to approve Plaintiff's request for leadership training in September 2018, and gave Plaintiff a lower performance evaluation in October 2018 that made Plaintiff ineligible for certain monetary awards. (*Id.* ¶¶ 59–60, 66–67, 89–90.) Bell further made racially and sexually inappropriate comments in October 2018. (*Id.* ¶¶ 131–39.) In addition, while Bell believed that Plaintiff was qualified to serve as acting RAC, Plaintiff was denied acting-supervisor assignments from August 2018 to January 2023, when ATF promoted him to a supervisory position. (*Id.* ¶¶ 70–72, 141.)

In February 2023, the Equal Employment Opportunity Commission found that Plaintiff had been subjected to unlawful reprisal. (*Id.* ¶ 21.) The ATF accepted that finding in March 2023. (*Id.* ¶ 22.) Plaintiff filed this case in June 2023, asserting Title VII claims for race discrimination, retaliation, and hostile work environment. (*Id.* ¶¶ 142–54.) He seeks declaratory and injunctive relief, compensatory damages, and attorney's fees and costs. (*Id.* at 7.)

**B. The Follow-On Lawsuit**

Plaintiff is employed with the ATF as an RAC in Tucson. (Doc. 1, ¶ 1.) From January through March 2024, Alexander Tisch served as acting RAC while Plaintiff was away on a temporary assignment. (*Id.* ¶ 21.) During that period, Bell arranged for new Tohono O'odham Police Department (TOPD) cases to be assigned to Plaintiff's group. (*Id.* ¶ 22.) Plaintiff did not agree to the permanent reassignment of all TOPD cases and did not learn that that had occurred until September 2024. (*Id.* ¶¶ 23, 35.) After learning about the reassignment, Plaintiff complained to ATF management that the reassignment was an act of retaliation by Bell for Plaintiff's prior EEO activity. (*Id.* ¶ 37.)

Further, in May and June 2024, Plaintiff emailed acting ASAC Andres Rivas a memorandum regarding Plaintiff's prior EEO activity, requesting that Rivas forward the

memorandum to Special Agent in Charge Brendan Iber. (*Id.* ¶¶ 27–28.) Rivas and Iber acknowledged receipt of the memorandum. (*Id.* ¶¶ 28–29.) In October 2024, Rivas and Iber lowered Plaintiff's performance rating for fiscal year 2024 despite a lack of documented performance deficiencies. (*Id.* ¶¶ 40–43.) The lower rating caused Plaintiff to lose a cash performance award. (*Id.* ¶ 44.)

After initiating EEO counseling in October 2024, Plaintiff informed Iber and acting ASAC Richard Chmielewski that he was removing himself from the Tucson workplace because he feared further retaliation involving Bell. (*Id.* ¶ 47.) Chmielewski, and the next acting ASAC, Timothy King, directed Plaintiff to return to the office unless he remained on approved leave and further directed him to avoid unnecessary communication with Bell. (*Id.* ¶¶ 49–51, 53.) Plaintiff returned to the office in December 2024 and encountered further hostile conduct by Bell, which ATF management failed to remedy. (*Id.* ¶¶ 56–58.) Bell retired that month. (*Id.* ¶ 58.)

In January 2025, Plaintiff discussed his prior EEO activity in detail with ASAC Sarah Mauricio. (*Id.* ¶¶ 59, 61.) In March 2025, Plaintiff disagreed with Mauricio about his group's investigative priorities and its partnership with the Tucson Police Department. (*Id.* ¶ 64.) Mauricio subsequently informed Plaintiff that, with Iber's concurrence, Plaintiff would be reassigned to a different Tucson group effective April 2025. (*Id.* ¶¶ 65–66.)

Plaintiff filed the follow-on case in September 2026, asserting Title VII claims for retaliation based on his 2024 performance evaluation and for hostile work environment. (*Id.* ¶¶ 69–83.) He seeks declaratory and equitable relief, restoration of employment benefits, compensatory damages, and attorney's fees and costs. (*Id.* at 14–15.)

**II. Legal Standard**

Federal Rule of Civil Procedure 42(a) provides that district courts may consolidate actions that involve common questions of law or fact. "District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases." *Hall v. Hall*, 584 U.S. 59, 77 (2018). In exercising that discretion, they should balance "the saving of time and effort consolidation would produce against any inconvenience, delay, or expense

that it would cause." *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984).

**III. Discussion**

To begin, Plaintiff is correct that there are factual and logical connections between the two cases. (Doc. 70 at 2–5; Doc. 74 at 2–3.) On Plaintiff's theory, the follow-on retaliation case would not exist if Plaintiff had not engaged in protected EEO activity and then filed this case. And both cases concern Plaintiff's employment with ATF, Bell's conduct, and ATF management's knowledge of Plaintiff's protected activity and response to such activity. But even so, consolidation is not appropriate: it would risk delaying this case without providing enough savings in time or effort to justify that risk.

First, this case is far more advanced. It has been pending for more than three years. Discovery is complete, and the deadline to file dispositive motions is 11 days away. (Doc. 68.) The follow-on case, in contrast, is only at the pleading stage—and Defendant's answer deadline is still weeks away. (Doc. 73 at 4.) Plaintiff argues that consolidation need not disrupt the existing schedule, which the Court has emphasized is all but final, because the parties could preserve completed discovery and limit new discovery to the events alleged in the follow-on case. (Doc. 70 at 6; Doc. 74 at 3–4.) But because those later events are the operative basis of the follow-on case, even discovery limited to those events would require substantial additional work. Combining the cases now would risk delaying this case while that work occurs. Maintaining separate schedules could reduce that risk, but then much of the discovery and motion practice would proceed separately anyway.

Second, the actionable conduct alleged in each case involves distinct periods, actors, and employment decisions. This case centers on the allegedly discriminatory denial of a promotion in 2018 and alleged retaliation in 2018 and 2019. The follow-on case centers on entirely different conduct in 2024 and 2025. Although Bell and Plaintiff's initial EEO activity feature in both cases, the follow-on case also involves conduct and decisions by Rivas, Iber, Chmielewski, King, and Mauricio. These differences limit the work that would be saved by consolidation. They also limit the risk of "inconsistent adjudications" that Plaintiff identifies. (Doc. 74 at 4.) Because the cases challenge different decisions, different

outcomes would not necessarily be inconsistent.

Plaintiff seems to suggest that consolidation would allow the parties to freely use discovery from one case in the other. (Doc. 70 at 5–6.) That is not correct. Consolidated cases keep their separate identities, and consolidation does not alter the parties' substantive rights. *Hall*, 584 U.S. at 76. Consolidation therefore would not, by itself, make evidence in this case admissible in the follow-on case (or vice versa). Furthermore, keeping the cases separate would not necessarily require the parties to redevelop relevant evidence. There is nothing preventing them from stipulating that evidence in this case will be admissible in the follow-on case absent a specific objection. *See United States v. Mezzanatto*, 513 U.S. 196, 202–03 (1995) (discussing the routine use of evidentiary stipulations in trial practice); *Singleton v. Allen*, 782 F. Supp. 3d 1092, 1146 (N.D. Ala. 2025) (describing the parties' agreement, in nonconsolidated cases, that evidence admitted in one case could be used in another absent a specific objection), *vacated sub nom. Allen v. Caster*, 146 S. Ct. 1196 (2026).

Consolidation risks delaying this more advanced case, and the benefits it might provide (if any) do not make that risk worthwhile. So the motion will be denied.

One last matter: Local Rule of Civil Procedure 42.1(b) requires the undersigned to consult with Judge Markovich before resolving this motion. The undersigned has done so.

* * *

**IT IS ORDERED** that Plaintiff's motion to consolidate (Doc. 70) is **denied**.

**IT IS FURTHER ORDERED** that the Clerk of Court must docket a copy of this Order in *Christopher Bort v. Todd Blanche*, D. Ariz. No. CV-26-00493-TUC-EJM.

Dated this 23rd day of November, 2026.

Maria S. Aguilera

Honorable Maria S. Aguilera
United States Magistrate Judge